(Slip Opinion) OCTOBER TERM, 2007 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DADA *v.* MUKASEY, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 06–1181.   Argued January 7, 2008—Decided June 16, 2008

Petitioner, a native and citizen of Nigeria, alleges that he married an American citizen in 1999.  His wife filed an I–130 Petition for Alien Relative on his behalf that was denied in 2003.  The Department of Homeland Security (DHS) charged Dada with being removable under the Immigration and Nationality Act for overstaying his temporary nonimmigrant visa.  The Immigration Judge (IJ) denied the request for a continuance pending adjudication of a second I–130 petition, found Dada eligible for removal, and granted his request for voluntary departure under 8 U. S. C. §1229c(b).  The Board of Immigration Appeals (BIA) affirmed and ordered Dada to depart within 30 days or suffer statutory penalties.  Two days before the end of the 30-day period, Dada sought to withdraw his voluntary departure request and filed a motion to reopen removal proceedings under 8 U. S. C. §1229a(c)(7), contending that new and material evidence demonstrated a bona fide marriage and that his case should be continued until resolution of the second I–130 petition.  After the voluntary departure period had expired, the BIA denied the request, reasoning that an alien who has been granted voluntary departure but does not depart in a timely fashion is statutorily barred from receiving adjustment of status.  It did not consider Dada's request to withdraw his voluntary departure request.  The Fifth Circuit affirmed.

*Held:* An alien must be permitted an opportunity to withdraw a motion for voluntary departure, provided the request is made before expiration of the departure period.  Pp. 5–20.

   (a) Resolution of this case turns on the interaction of two aspects of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996—the alien's right to file a motion to reopen in removal proceedings and the rules governing voluntary departure.  Pp. 5–12.

Syllabus

(1) Voluntary departure is discretionary relief that allows certain favored aliens to leave the country willingly. It benefits the Government by, *e.g.,* expediting the departure process and avoiding deportation expenses, and benefits the alien by, *e.g.,* facilitating readmission. To receive these benefits, the alien must depart timely. As relevant here, when voluntary departure is requested at the conclusion of removal proceedings, the departure period may not exceed 60 days. 8 U. S. C. §1229c(b)(2). Pp. 5–9.

(2) An alien is permitted to file one motion to reopen, §1229a(c)(7)(A), asking the BIA to change its decision because of newly discovered evidence or changed circumstances. The motion generally must be filed within 90 days of a final administrative removal order, §1229a(c)(7)(C)(1). Although neither the text of §1229c or §1229a(c)(7) nor the applicable legislative history indicates whether Congress intended for an alien granted voluntary departure to be permitted to pursue a motion to reopen, the statutory text plainly guarantees to each alien the right to file "one motion to reopen proceedings under this section," §1229a(c)(7)(A). Pp. 9–12.

(b) Section 1229c(b)(2) unambiguously states that the voluntary departure period "shall not be valid" for more than "60 days," but says nothing about the motion to reopen; and nothing in the statutes or past usage indicates that voluntary departure or motions to reopen cannot coexist. In reading a statute, the Court must not "look merely to a particular clause," but consider "in connection with it the whole statute." *Kokoszka* v. *Belford*, 417 U. S. 642, 650. Reading the Act as a whole, and considering the statutory scheme governing voluntary departure alongside §1229a(c)(7)(A)'s right to pursue "one motion to reopen," the Government's position that an alien who has agreed to voluntarily depart is not entitled to pursue a motion to reopen is unsustainable. It would render the statutory reopening right a nullity in most voluntary departure cases since it is foreseeable, and quite likely, that the voluntary departure time will expire long before the BIA decides a timely-filed motion to reopen. Absent tolling or some other remedial action by this Court, then, the alien who is granted voluntary departure but whose circumstances have changed in a manner cognizable by a motion to reopen is between Scylla and Charybdis: The alien either may leave the United States in accordance with the voluntary departure order, with the effect that the motion to reopen is deemed withdrawn, or may stay in the United States to pursue the case's reopening, risking expiration of the departure period and ineligibility for adjustment of status, the underlying relief sought. Because a motion to reopen is meant to ensure a proper and lawful disposition, this Court is reluctant to assume that the voluntary departure statute is designed to make reopening un-

Syllabus

available for the distinct class of deportable aliens most favored by the same law, when the statute's plain text reveals no such limitation. Pp. 12–16.

(c) It is thus necessary to read the Act to preserve the alien's right to pursue reopening while respecting the Government's interest in the voluntary departure arrangement's *quid pro quo*. There is no statutory authority for petitioner's proposal to automatically toll the voluntary departure period during the motion to reopen's pendency. Voluntary departure is an agreed-upon exchange of benefits, much like a settlement agreement. An alien who is permitted to stay past the departure date to wait out the motion to reopen's adjudication cannot then demand the full benefits of voluntary departure, for the Government's benefit—a prompt and costless departure—would be lost. It would also invite abuse by aliens who wish to stay in the country but whose cases are unlikely to be reopened. Absent a valid regulation otherwise, the appropriate way to reconcile the voluntary departure and motion to reopen provisions is to allow an alien to withdraw from the voluntary departure agreement. The Department of Justice, which has authority to adopt the relevant regulations, has made a preliminary determination that the Act permits an alien to withdraw a voluntary departure application before expiration of the departure period. Although not binding in the present case, this proposed interpretation "warrants respectful consideration." *Wisconsin Dept. of Health and Family Servs.* v. *Blumer*, 534 U. S. 473, 497. To safeguard the right to pursue a motion to reopen for voluntary departure recipients, the alien must be permitted to withdraw, unilaterally, a voluntary departure request before the departure period expires, without regard to the motion to reopen's underlying merits. The alien has the option either to abide by the voluntary departure's terms, and receive its agreed-upon benefits; or, alternatively, to forgo those benefits and remain in the country to pursue an administrative motion. An alien selecting the latter option gives up the possibility of readmission and becomes subject to the IJ's alternative order of removal. The alien may be removed by the DHS within 90 days, even if the motion to reopen has yet to be adjudicated. But the alien may request a stay of the removal order, and, though the BIA has discretion to deny a motion for a stay based on the merits of the motion to reopen, it may constitute an abuse of discretion for the BIA to deny a motion for stay where the motion states nonfrivolous grounds for reopening. Though this interpretation still confronts the alien with a hard choice, it avoids both the quixotic results of the Government's proposal and the elimination of benefits to the Government that would follow from petitioner's tolling rule. Pp. 16–20.

207 Fed. Appx. 425, reversed and remanded.

Syllabus

KENNEDY, J., delivered the opinion of the Court, in which STEVENS, SOUTER, GINSBURG, and BREYER, JJ., joined. SCALIA, J., filed a dissenting opinion, in which ROBERTS, C. J., and THOMAS, J., joined. ALITO, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 06–1181

_____

## SAMSON TAIWO DADA, PETITIONER *v.* MICHAEL B. MUKASEY, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 16, 2008]

JUSTICE KENNEDY delivered the opinion of the Court.

We decide in this case whether an alien who has requested and been granted voluntary departure from the United States, a form of discretionary relief that avoids certain statutory penalties, must adhere to that election and depart within the time prescribed, even if doing so causes the alien to forgo a ruling on a pending, unresolved motion to reopen the removal proceedings. The case turns upon the interaction of relevant provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 110 Stat. 3009–546 (IIRIRA or Act). The Act provides that every alien ordered removed from the United States has a right to file one motion to reopen his or her removal proceedings. See 8 U. S. C. §1229a(c)(7) (2000 ed., Supp. V). The statute also provides, however, that if the alien's request for voluntary departure is granted after he or she is found removable, the alien is required to depart within the period prescribed by immigration officials, which cannot exceed 60 days. See §1229c(b)(2) (2000 ed.). Failure to depart within the prescribed period renders the alien ineligible for certain forms of relief, includ-

ing adjustment of status, for a period of 10 years. §1229c(d)(1) (2000 ed., Supp. V). Pursuant to regulation, however, departure has the effect of withdrawing the motion to reopen. See 8 CFR §1003.2(d) (2007).

Without some means, consistent with the Act, to reconcile the two commands—one directing voluntary departure and the other directing termination of the motion to reopen if an alien departs the United States—an alien who seeks reopening has two poor choices: The alien can remain in the United States to ensure the motion to reopen remains pending, while incurring statutory penalties for overstaying the voluntary departure date; or the alien can avoid penalties by prompt departure but abandon the motion to reopen.

The issue is whether Congress intended the statutory right to reopen to be qualified by the voluntary departure process. The alien, who is petitioner here, urges that filing a motion to reopen tolls the voluntary departure period pending the motion's disposition. We reject this interpretation because it would reconfigure the voluntary departure scheme in a manner inconsistent with the statutory design. We do not have the authority to interpret the statute as petitioner suggests. Still, the conflict between the right to file a motion to reopen and the provision requiring voluntary departure no later than 60 days remains untenable if these are the only two choices available to the alien. Absent a valid regulation resolving the dilemma in a different way, we conclude the alien must be permitted an opportunity to withdraw the motion for voluntary departure, provided the request is made before the departure period expires. Petitioner attempted to avail himself of this opportunity below. The Court of Appeals for the Fifth Circuit did not disturb the Board of Immigration Appeals' (BIA or Board) denial of petitioner's request to withdraw the voluntary departure election. We now reverse its decision and remand the case.

## I

Petitioner Samson Taiwo Dada, a native and citizen of Nigeria, came to the United States in April 1998 on a temporary nonimmigrant visa. He overstayed it. In 1999, petitioner alleges, he married an American citizen. Petitioner's wife filed an I–130 Petition for Alien Relative on his behalf. The necessary documentary evidence was not provided, however, and the petition was denied in February 2003.

In 2004, the Department of Homeland Security (DHS) charged petitioner with being removable under §237(a)(1)(B) of the Immigration and Nationality Act (INA), 66 Stat. 201, as amended, 8 U. S. C. §1227(a)(1)(B) (2000 ed., Supp. V), for overstaying his visa. Petitioner's wife then filed a second I–130 petition. The Immigration Judge (IJ) denied petitioner's request for a continuance pending adjudication of the newly filed I–130 petition and noted that those petitions take an average of about three years to process. The IJ found petitioner to be removable but granted the request for voluntary departure under §1229c(b) (2000 ed.). The BIA affirmed on November 4, 2005, without a written opinion. It ordered petitioner to depart within 30 days or suffer statutory penalties, including a civil fine of not less than $1,000 and not more than $5,000 and ineligibility for relief under §§240A, 240B, 245, 248, and 249 of the INA for a period of 10 years. See App. to Pet. for Cert. 5–6.

Two days before expiration of the 30-day period, on December 2, 2005, petitioner sought to withdraw his request for voluntary departure. At the same time he filed with the BIA a motion to reopen removal proceedings under 8 U. S. C. §1229a(c)(7) (2000 ed., Supp. V). He contended that his motion recited new and material evidence demonstrating a bona fide marriage and that his case should be continued until the second I–130 petition was resolved.

On February 8, 2006, more than two months after the voluntary departure period expired, the BIA denied the motion to reopen on the ground that petitioner had overstayed his voluntary departure period. Under §240B(d) of the INA, 8 U. S. C. §1229c(d) (2000 ed. and Supp. V), the BIA reasoned, an alien who has been granted voluntary departure but fails to depart in a timely fashion is statutorily barred from applying for and receiving certain forms of discretionary relief, including adjustment of status. See App. to Pet. for Cert. 3–4. The BIA did not address petitioner's motion to withdraw his request for voluntary departure.

The Court of Appeals for the Fifth Circuit affirmed. *Dada* v. *Gonzales*, 207 Fed. Appx. 425 (2006) *(per curiam)*. Relying on its decision in *Banda-Ortiz* v. *Gonzales*, 445 F. 3d 387 (2006), the court held that the BIA's reading of the applicable statutes as rendering petitioner ineligible for relief was reasonable. The Fifth Circuit joined the First and Fourth Circuits in concluding that there is no automatic tolling of the voluntary departure period. See *Chedad* v. *Gonzales,* 497 F. 3d 57 (CA1 2007); *Dekoladenu* v. *Gonzales*, 459 F. 3d 500 (CA4 2006). Four other Courts of Appeals have reached the opposite conclusion. See, *e.g., Kanivets* v. *Gonzales*, 424 F. 3d 330 (CA3 2005); *Sidik-houya* v. *Gonzales*, 407 F. 3d 950 (CA8 2005); *Azarte* v. *Ashcroft*, 394 F. 3d 1278 (CA9 2005); *Ugokwe* v. *United States Atty. Gen.*, 453 F. 3d 1325 (CA11 2006).

We granted certiorari, see *Dada* v. *Keisler*, 551 U. S. ___ (2007), to resolve the disagreement among the Court of Appeals. After oral argument we ordered supplemental briefing, see 552 U. S. ___ (2008), to address whether an alien may withdraw his request for voluntary departure before expiration of the departure period. Also after oral argument, on January 10, 2008, petitioner's second I–130 application was denied by the IJ on the ground that his marriage is a sham, contracted solely to obtain immigra-

tion benefits.

## II

Resolution of the questions presented turns on the interaction of two statutory schemes—the statutory right to file a motion to reopen in removal proceedings; and the rules governing voluntary departure.

## A

Voluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found deportable—to leave the country willingly. Between 1927 to 2005, over 42 million aliens were granted voluntary departure; almost 13 million of those departures occurred between 1996 and 2005 alone. See Dept. of Homeland Security, Aliens Expelled: Fiscal Years 1892 to 2005, Table 38 (2005), online at http://www.dhs.gov/ximgtn/statistics/publications/YrBk05En.shtm (all Internet materials as visited June 13, 2008, and available in Clerk of Court's case file).

Voluntary departure was "originally developed by administrative officers, in the absence of a specific mandate in the statute." 6 C. Gordon, S. Mailman, & S. Yale-Loehr, Immigration Law and Procedure §74.02[1], p. 74–15 (rev. ed. 2007) (hereinafter Gordon). The practice was first codified in the Alien Registration Act of 1940, §20, 54 Stat. 671. The Alien Registration Act amended §19 of the Immigration Act of Feb. 5, 1917, 39 Stat. 889, to provide that an alien "deportable under any law of the United States and who has proved good moral character for the preceding five years" may be permitted by the Attorney General to "depart the United States to any country of his choice at his own expense, in lieu of deportation." §20(c), 54 Stat. 672.

In 1996, perhaps in response to criticism of immigration

officials who had expressed frustration that aliens granted
voluntary departure were "permitted to continue their
illegal presence in the United States for months, and even
years," Letter from Benjamin G. Habberton, Acting Com-
missioner on Immigration and Naturalization, to the
Executive Director of the President's Commission on
Immigration and Naturalization, reprinted in Hearings
before the House of Representatives Committee on the
Judiciary, 82d Cong., 2d Sess., 1954 (Comm. Print 1952),
Congress curtailed the period of time during which an
alien may remain in the United States pending voluntary
departure.  The Act, as pertinent to voluntary departures
requested  at  the  conclusion  of  removal  proceedings,
provides:

> "The Attorney General may permit an alien voluntar-
> ily to depart the United States at the alien's own ex-
> pense if, at the conclusion of a proceeding under sec-
> tion 1229a of this title, the immigration judge enters
> an order granting voluntary departure in lieu of re-
> moval and finds that—
>
> "(A) the alien has been physically present in the
> United States for a period of at least one year im-
> mediately preceding the date the notice to appear
> was served under section 1229(a) of this title;
>
> "(B) the alien is, and has been, a person of good
> moral character for at least 5 years immediately
> preceding the alien's application for voluntary de-
> parture;
>
> "(C) the alien is not deportable under section
> 1227(a)(2)(A)(iii) or section 1227(a)(4) of this title;
> and
>
> "(D)  the alien has established by clear and convinc-
> ing evidence that the alien has the means to depart
> the United States and intends to do so."  8 U. S. C.
> §1229c(b)(1).

See also §1229c(a)(1) ("The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection" in lieu of being subject to removal proceedings or prior to the completion of those proceedings; the alien need not meet the requirements of §1229c(b)(1) if removability is conceded).

When voluntary departure is requested at the conclusion of removal proceedings, as it was in this case, the statute provides a voluntary departure period of not more than 60 days. See §1229c(b)(2). The alien can receive up to 120 days if he or she concedes removability and requests voluntary departure before or during removal proceedings. See §1229c(a)(2)(A). Appropriate immigration authorities may extend the time to depart but only if the voluntary departure period is less than the statutory maximum in the first instance. The voluntary departure period in no event may exceed 60 or 120 days for §1229c(b) and §1229c(a) departures, respectively. See 8 CFR §1240.26(f) (2007) ("Authority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs. . . . In no event can the total period of time, including any extension, exceed 120 days or 60 days as set forth in section 240B of the Act").

The voluntary departure period typically does not begin to run until administrative appeals are concluded. See 8 U. S. C. §1101(47)(B) ("The order . . . shall become final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals"); §1229c(b)(1) (Attorney General may permit voluntary departure at conclusion of removal proceedings); see also 8 CFR §1003.6(a) (2007) ("[T]he decision in any

proceeding . . . from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal . . . ").  In addition some Federal Courts of Appeals have found that they may stay voluntary departure pending consideration of a petition for review on the merits.  See, *e.g., Thapa* v. *Gonzales*, 460 F. 3d 323, 329–332 (CA2 2006); *Obale* v. *Attorney General of United States*, 453 F. 3d 151, 155–157 (CA3 2006).  But see *Ngarurih* v. *Ashcroft*, 371 F. 3d 182, 194 (CA4 2004).  This issue is not presented here, however, and we leave its resolution for another day.

Voluntary departure, under the current structure, allows the Government and the alien to agree upon a *quid pro quo*.  From the Government's standpoint, the alien's agreement to leave voluntarily expedites the departure process and avoids the expense of deportation—including procuring necessary documents and detaining the alien pending deportation.  The Government also eliminates some of the costs and burdens associated with litigation over the departure.  With the apparent purpose of assuring that the Government attains the benefits it seeks, the Act imposes limits on the time for voluntary departure, see *supra,* at 7*,* and prohibits judicial review of voluntary departure decisions, see 8 U. S. C. §§1229c(f) and 1252(a)(2)(B)(i).

Benefits to the alien from voluntary departure are evident as well.  He or she avoids extended detention pending completion of travel arrangements; is allowed to choose when to depart (subject to certain constraints); and can select the country of destination.  And, of great importance, by departing voluntarily the alien facilitates the possibility of readmission.  The practice was first justified as involving "no warrant of deportation . . . so that if [the alien reapplies] for readmission in the proper way he will not be barred."  2 National Commission on Law Observance and Enforcement: Report on the Enforcement of the

Deportation Laws of the United States 57, 102–103 (1931) (Report No. 5). The current statute likewise allows an alien who voluntarily departs to sidestep some of the penalties attendant to deportation. Under the current Act, an alien involuntarily removed from the United States is ineligible for readmission for a period of 5, 10, or 20 years, depending upon the circumstances of removal. See 8 U. S. C. §1182(a)(9)(A)(i) ("Any alien who has been ordered removed under section 1225(b)(1) of this title or at the end of proceedings under section 1229a of this title initiated upon the alien's arrival in the United States and who again seeks admission within 5 years of the date of such removal (or within 20 years in the case of a second or subsequent removal . . . ) is inadmissible"); §1182(a)(9)(A)(ii) ("Any alien not described in clause (i) who—(I) has been ordered removed under section [240] or any other provision of law, or (II) departed the United States while an order of removal was outstanding, and who seeks admission within 10 years of the date of such alien's departure or removal . . . is inadmissible"). An alien who makes a timely departure under a grant of voluntary departure, on the other hand, is not subject to these restrictions—although he or she otherwise may be ineligible for readmission based, for instance, on an earlier unlawful presence in the United States, see §1182(a)(9)(B)(i).

B

A motion to reopen is a form of procedural relief that "asks the Board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing." 1 Gordon §3.05[8][c]. Like voluntary departure, reopening is a judicial creation later codified by federal statute. An early reference to the procedure was in 1916, when a Federal District Court addressed an alien's motion to reopen her case to provide evidence of her marriage to a United States citizen. See *Ex parte Chan Shee*, 236 F. 579

(ND Cal. 1916); see also *Chew Hoy Quong* v. *White*, 244 F. 749, 750 (CA9 1917) (addressing an application to reopen to correct discrepancies in testimony). "The reopening of a case by the immigration authorities for the introduction of further evidence" was treated then, as it is now, as "a matter for the exercise of their discretion"; where the alien was given a "full opportunity to testify and to present all witnesses and documentary evidence at the original hearing," judicial interference was deemed unwarranted. *Wong Shong Been* v. *Proctor*, 79 F. 2d 881, 883 (CA9 1935).

In 1958, when the BIA was established, the Attorney General promulgated a rule for the reopening and reconsideration of removal proceedings, 8 CFR §3.2, upon which the current regulatory provision is based. See 23 Fed. Reg. 9115, 9118–9119 (1958), final rule codified at 8 CFR §3.2 (1959) ("The Board may on its own motion reopen or reconsider any case in which it has rendered a decision" upon a "written motion"); see also Board of Immigration Appeals: Powers; and Reopening or Reconsideration of Cases, 27 Fed. Reg. 96–97 (Jan. 5, 1962). Until 1996, there was no time limit for requesting the reopening of a case due to the availability of new evidence.

Then, in 1990, "fear[ful] that deportable or excludable aliens [were] try[ing] to prolong their stays in the U. S. by filing one type of discretionary relief . . . after another in immigration proceedings," Justice Dept. Finds Aliens Not Abusing Requests for Relief, 68 No. 27 Interpreter Releases 907 (July 22, 1991), Congress ordered the Attorney General to "issue regulations with respect to . . . the period of time in which motions to reopen . . . may be offered in deportation proceedings," including "a limitation on the number of such motions that may be filed and a maximum time period for the filing of such motions," §545(d)(1), 104 Stat. 5066. The Attorney General found little evidence of abuse, concluding that requirements for reopening are a disincentive to bad faith filings. See 68 Interpreter Re-

leases, *supra*. Because "Congress . . . neither rescinded [n]or amended its mandate to limit the number and time frames of motions," however, the Department of Justice (DOJ) issued a regulation imposing new time limits and restrictions on filings. The new regulation allowed the alien to file one motion to reopen within 90 days. Executive Office for Immigration Review; Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18900, 18901, 18905 (1996); see 8 CFR §3.2(c) (1996).

With the 1996 enactment of the Act, Congress adopted the recommendations of the DOJ with respect to numerical and time limits. The current provision governing motions to reopen states:

> "(A) In general
>
> "An alien may file one motion to reopen proceedings under this section . . . .
>
> "(B) Contents
>
> "The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.
>
> "(C) Deadline
>
> (i) "In general
>
> "Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U. S. C. §1229a(c)(7) (2000 ed., Supp. V).

To qualify as "new," §1229a(c)(7)(B), the facts must be "material" and of the sort that "could not have been discovered or presented at the former hearing," 8 CFR §1003.2(c)(1) (2007); 1 Gordon §3.05[8][c] ("Evidence is not previously unavailable merely because the movant chose not to testify or to present evidence earlier, or because the IJ refused to admit the evidence"). There are narrow exceptions to the 90-day filing period for asylum pro-

ceedings and claims of battered spouses, children, and parents, see 8 U. S. C. §§1229a(c)(7)(C)(ii), (iv) (2000 ed., Supp. V), which are not applicable here.

The Act, to be sure, limits in significant ways the availability of the motion to reopen. It must be noted, though, that the Act transforms the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien. Nowhere in §1229c(b) or §1229a(c)(7) did Congress discuss the impact of the statutory right to file a motion to reopen on a voluntary departure agreement. And no legislative history indicates what some Members of Congress might have intended with respect to the motion's status once the voluntary departure period has elapsed. But the statutory text is plain insofar as it guarantees to each alien the right to file "one motion to reopen proceedings under this section." §1229a(c)(7)(A) (2000 ed., Supp. V).

## III

The Government argues that, by requesting and obtaining permission to voluntarily depart, the alien knowingly surrenders the opportunity to seek reopening. See Brief for Respondent 29–30. Further, according to the Government, petitioner's proposed rule for tolling the voluntary departure period would undermine the "carefully crafted rules governing voluntary departure," including the statutory directive that these aliens leave promptly. *Id.,* at 18, 46–47.

To be sure, 8 U. S. C. §1229c(b)(2) contains no ambiguity: The period within which the alien may depart voluntarily "shall not be valid for a period exceeding 60 days." See also 8 CFR §1240.26(f) (2007) ("In no event can the total period of time, including any extension, exceed" the statutory periods prescribed by 8 U. S. C. §1229c(a) and §1229c(b)); §1229c(d) (2000 ed. and Supp. V) (imposing statutory penalties for failure to depart). Further,

§1229a(c)(7) does not forbid a scheme under which an alien knowingly relinquishes the right to seek reopening in exchange for other benefits, including those available to the alien under the voluntary departure statute. That does not describe this case, however. Nothing in the statutes or past usage with respect to voluntary departure or motions to reopen indicates they cannot coexist. Neither §1229a(c)(7) nor §1229c(b)(2) says anything about the filing of a motion to reopen by an alien who has requested and been granted the opportunity to voluntarily depart. And there is no other statutory language that would place the alien on notice of an inability to seek the case's reopening in the event of newly discovered evidence or changed circumstances bearing upon eligibility for relief.

In reading a statute we must not "look merely to a particular clause," but consider "in connection with it the whole statute." *Kokoszka* v. *Belford*, 417 U. S. 642, 650 (1974) (quoting *Brown* v. *Duchesne*, 19 How. 183, 194 (1857); internal quotation marks omitted); see also *Gozlon-Peretz* v. *United States*, 498 U. S. 395, 407 (1991) ("'In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy'" (quoting *Crandon* v. *United States*, 494 U. S. 152, 158 (1990))); *United States* v. *Heirs of Boisdoré*, 8 How. 113, 122 (1850) ("[W]e must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy").

Reading the Act as a whole, and considering the statutory scheme governing voluntary departure alongside the statutory right granted to the alien by 8 U. S. C. §1229a(c)(7)(A) (2000 ed., Supp. V) to pursue "one motion to reopen proceedings," the Government's position that the alien is not entitled to pursue a motion to reopen if the alien agrees to voluntarily depart is unsustainable. It would render the statutory right to seek reopening a

nullity in most cases of voluntary departure. (And this group is not insignificant in number; between 2002 and 2006, 897,267 aliens were found removable, of which 122,866, or approximately 13.7%, were granted voluntary departure. See DOJ, Executive Office for Immigration Review, FY 2006 Statistical Year Book, at Q1 (Feb. 2007).) It is foreseeable, and quite likely, that the time allowed for voluntary departure will expire long before the BIA issues a decision on a timely filed motion to reopen. See Proposed Rules, DOJ, Executive Office for Immigration Review, Voluntary Departure: Effect of a Motion to Reopen or Reconsider or a Petition for Review, 72 Fed. Reg. 67674, 67677, and n. 2 (2007) ("As a practical matter, it is often the case that an immigration judge or the Board cannot reasonably be expected to adjudicate a motion to reopen or reconsider during the voluntary departure period"). These practical limitations must be taken into account. In the present case the BIA denied petitioner's motion to reopen 68 days after he filed the motion—and 66 days after his voluntary departure period had expired. Although the record contains no statistics on the average disposition time for motions to reopen, the number of BIA proceedings has increased over the last two decades, doubling between 1992 and 2000 alone; and, as a result, the BIA's backlog has more than tripled, resulting in a total of 63,763 undecided cases in 2000. See Dorsey & Whitney LLP, Study Conducted for: the American Bar Association Commission on Immigration Policy, Practice and Pro Bono Re: Board of Immigration Appeals: Procedural Reforms to Improve Case Management 13 (2003), online at http://www.dorsey.com/files/upload/DorseyStudyABA_8mgPDF.pdf.

Since 2000, the BIA has adopted new procedures to reduce its backlog and shorten disposition times. In 2002, the DOJ introduced rules to improve case management, including an increase in the number of cases referred to a single Board member and use of summary disposition

procedures for cases without basis in law or fact. See BIA: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54878 (2002), final rule codified at 8 CFR §1003 (2006); see also §1003.1(e)(4) (summary affirmance procedures). Nevertheless, on September 30, 2005, there were 33,063 cases pending before the BIA, 18% of which were more than a year old. See FY 2006 Statistical Year Book, *supra,* at U1. On September 30, 2006, approximately 20% of the cases pending had been filed during fiscal year 2005. See *ibid.* Whether an alien's motion will be adjudicated within the 60-day statutory period in all likelihood will depend on pure happenstance—namely, the backlog of the particular Board member to whom the motion is assigned. Cf. *United States* v. *Wilson*, 503 U. S. 329, 334 (1992) (arbitrary results are "not to be presumed lightly").

Absent tolling or some other remedial action by the Court, then, the alien who is granted voluntary departure but whose circumstances have changed in a manner cognizable by a motion to reopen is between Scylla and Charybdis: He or she can leave the United States in accordance with the voluntary departure order; but, pursuant to regulation, the motion to reopen will be deemed withdrawn. See 8 CFR §1003.2(d); see also 23 Fed. Reg. 9115, 9118, final rule codified at 8 CFR §3.2 (1958). Alternatively, if the alien wishes to pursue reopening and remains in the United States to do so, he or she risks expiration of the statutory period and ineligibility for adjustment of status, the underlying relief sought. See 8 U. S. C. §1229c(d)(1) (2000 ed., Supp. V) (failure to timely depart renders alien "ineligible, for a period of 10 years," for cancellation of removal under §240A, adjustment of status under §245, change of nonimmigrant status under §248, and registry under §249 of the INA); see also App. to Pet. for Cert. 3–4 (treating petitioner's motion to reopen as forfeited for failure to depart).

The purpose of a motion to reopen is to ensure a proper

and lawful disposition. We must be reluctant to assume that the voluntary departure statute was designed to remove this important safeguard for the distinct class of deportable aliens most favored by the same law. See 8 U. S. C. §§1229c(a)(1), (b)(1)(C) (barring aliens who have committed, *inter alia,* aggravated felonies or terrorism offenses from receiving voluntary departure); §1229c(b)(1)(B) (requiring an alien who obtains voluntary departure at the conclusion of removal proceedings to demonstrate "good moral character"). This is particularly so when the plain text of the statute reveals no such limitation. See *Costello* v. *INS*, 376 U. S. 120, 127–128 (1964) (counseling long hesitation "before adopting a construction of [the statute] which would, with respect to an entire class of aliens, completely nullify a procedure so intrinsic a part of the legislative scheme"); see also *Stone* v. *INS*, 514 U. S. 386, 399 (1995) ("Congress might not have wished to impose on the alien" the difficult choice created by treating a motion to reopen as rendering the underlying order nonfinal for purposes of judicial review); *INS* v. *St. Cyr*, 533 U. S. 289, 320 (2001) (recognizing " 'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien' " (quoting *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 449 (1987))).

## IV

### A

It is necessary, then, to read the Act to preserve the alien's right to pursue reopening while respecting the Government's interest in the *quid pro quo* of the voluntary departure arrangement.

Some solutions, though, do not conform to the statutory design. Petitioner, as noted, proposes automatic tolling of the voluntary departure period during the pendency of the motion to reopen. We do not find statutory authority for this result. Voluntary departure is an agreed-upon ex-

change of benefits, much like a settlement agreement. In return for anticipated benefits, including the possibility of readmission, an alien who requests voluntary departure represents that he or she "has the means to depart the United States and intends to do so" promptly. 8 U. S. C. §1229c(b)(1)(D); 8 CFR §§1240.26(c)(1)–(2) (2007); cf. §1240.26(c)(3) (the judge may impose additional conditions to "ensure the alien's timely departure from the United States"). Included among the substantive burdens imposed upon the alien when selecting voluntary departure is the obligation to arrange for departure, and actually depart, within the 60-day period. Cf. *United States* v. *Brockamp*, 519 U. S. 347, 352 (1997) (substantive limitations are not subject to equitable tolling). If the alien is permitted to stay in the United States past the departure date to wait out the adjudication of the motion to reopen, he or she cannot then demand the full benefits of voluntary departure; for the benefit to the Government—a prompt and costless departure—would be lost. Furthermore, it would invite abuse by aliens who wish to stay in the country but whose cases are not likely to be reopened by immigration authorities.

B

Although a statute or regulation might be adopted to resolve the dilemma in a different manner, as matters now stand the appropriate way to reconcile the voluntary departure and motion to reopen provisions is to allow an alien to withdraw the request for voluntary departure before expiration of the departure period.

The DOJ, which has authority to adopt regulations relevant to the issue at hand, has made a preliminary determination that the Act permits an alien to withdraw an application for voluntary departure before expiration of the departure period. According to this proposal, there is nothing in the Act or the implementing regulations that

makes the grant of voluntary departure irrevocable. See 72 Fed. Reg. 67679. Accordingly, the DOJ has proposed an amendment to 8 CFR §1240.26 that, prospectively, would "provide for the automatic termination of a grant of voluntary departure upon the timely filing of a motion to reopen or reconsider, as long as the motion is filed prior to the expiration of the voluntary departure period." 72 Fed. Reg. 67679, Part IV–D; cf. *id.,* at 67682, Part VI ("The provisions of this proposed rule will be applied prospectively only, that is, only with respect to immigration judge orders issued on or after the effective date of the final rule that grant a period of voluntary departure"). Although not binding in the present case, the DOJ's proposed interpretation of the statutory and regulatory scheme as allowing an alien to withdraw from a voluntary departure agreement "warrants respectful consideration." *Wisconsin Dept. of Health and Family Servs.* v. *Blumer,* 534 U. S. 473, 497 (2002) (citing *United States* v. *Mead Corp.,* 533 U. S. 218 (2001), and *Thomas Jefferson Univ.* v. *Shalala,* 512 U. S. 504 (1994)).

We hold that, to safeguard the right to pursue a motion to reopen for voluntary departure recipients, the alien must be permitted to withdraw, unilaterally, a voluntary departure request before expiration of the departure period, without regard to the underlying merits of the motion to reopen. As a result, the alien has the option either to abide by the terms, and receive the agreed-upon benefits, of voluntary departure; or, alternatively, to forgo those benefits and remain in the United States to pursue an administrative motion.

If the alien selects the latter option, he or she gives up the possibility of readmission and becomes subject to the IJ's alternate order of removal. See 8 CFR §1240.26(d). The alien may be removed by the Department of Homeland Security within 90 days, even if the motion to reopen has yet to be adjudicated. See 8 U. S. C. §1231(a)(1)(A).

But the alien may request a stay of the order of removal, see BIA Practice Manual §6.3(a), online at http://www.usdoj.gov/eoir/vll/qapracmanual/apptmtn4.htm; cf. 8 U. S. C. §1229a(b)(5)(C) (providing that a removal order entered *in absentia* is stayed automatically pending a motion to reopen); and, though the BIA has discretion to deny the motion for a stay, it may constitute an abuse of discretion for the BIA to do so where the motion states nonfrivolous grounds for reopening.

Though this interpretation still confronts the alien with a hard choice, it avoids both the quixotic results of the Government's proposal and the elimination of benefits to the Government that would follow from petitioner's tolling rule. Contrary to the Government's assertion, the rule we adopt does not alter the *quid pro quo* between the Government and the alien. If withdrawal is requested prior to expiration of the voluntary departure period, the alien has not received benefits without costs; the alien who withdraws from a voluntary departure arrangement is in the same position as an alien who was not granted voluntary departure in the first instance. Allowing aliens to withdraw from their voluntary departure agreements, moreover, establishes a greater probability that their motions to reopen will be considered. At the same time, it gives some incentive to limit filings to nonfrivolous motions to reopen; for aliens with changed circumstances of the type envisioned by Congress in drafting §1229a(c)(7) (2000 ed. and Supp. V) are the ones most likely to forfeit their previous request for voluntary departure in return for the opportunity to adjudicate their motions. Cf. Supplemental Brief for Respondent 1–2 ("[I]t is extraordinarily rare for an alien who has requested and been granted voluntary departure by the BIA to seek to withdraw from that arrangement within the voluntary departure period").

A more expeditious solution to the untenable conflict between the voluntary departure scheme and the motion

to reopen might be to permit an alien who has departed the United States to pursue a motion to reopen post-departure, much as Congress has permitted with respect to judicial review of a removal order. See IIRIRA §306(b), 110 Stat. 3009–612 (repealing 8 U. S. C. §1105a(c) (1994 ed.), which prohibited an alien who "departed from the United States after the issuance of the order" to seek judicial review). As noted previously, 8 CFR §1003.2(d) provides that the alien's departure constitutes withdrawal of the motion to reopen. This regulation, however, has not been challenged in these proceedings, and we do not consider it here.

\*     \*     \*

Petitioner requested withdrawal of his motion for voluntary departure prior to expiration of his 30-day departure period. The BIA should have granted this request, without regard to the merits of petitioner's I–130 petition, and permitted petitioner to pursue his motion to reopen. We find this same mistake implicit in the Court of Appeals' decision. We reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 06–1181

_____

## SAMSON TAIWO DADA, PETITIONER *v.* MICHAEL B. MUKASEY, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[June 16, 2008]

JUSTICE SCALIA, with whom THE CHIEF JUSTICE and JUSTICE THOMAS join, dissenting.

The statutory provision at issue here authorizes the Attorney General to permit an alien who has been found deportable, if he so requests, to depart the country voluntarily. This enables the alien to avoid detention pending involuntary deportation, to select his own country of destination, to leave according to his own schedule (within the prescribed period), and to avoid restrictions upon readmission that attend involuntary departure. The statute specifies that the permission "shall not be valid for a period exceeding 60 days," 8 U. S. C. §1229c(b)(2), and that failure to depart within the prescribed period causes the alien to be ineligible for certain relief, including adjustment of status, for 10 years, §1229c(d)(1) (2000 ed., Supp. V). Moreover, pursuant to a regulation that the Court accepts as valid, departure (whether voluntary or involuntary) terminates the alien's ability to move for reopening of his removal proceeding, and withdraws any such motion filed before his departure. See 8 CFR §1003.2(d) (2007). All of these provisions were in effect when petitioner agreed to depart, and the Court cites no statute or regulation currently in force that permits an alien who has agreed voluntarily to depart to change his mind. Yet the Court holds that petitioner must be permitted to renounce that agree-

ment (the opinion dresses this up as "withdraw[ing] the motion for voluntary departure") provided the request is made before the departure period expires. *Ante*, at 2. That is "necessary," the Court says, to "preserve the alien's right to pursue reopening," *ante*, at 16, forfeiture of which was the known consequence of the departure he had agreed to. The Court's perceived "necessity" does not exist, and the Court lacks the authority to impose its chosen remedy. I respectfully dissent.

\*    \*    \*

The Court is resolute in its belief that there is a "conflict between the right to file a motion to reopen and the provision requiring voluntary departure no later than 60 days." *Ante*, at 2. The statute cannot be interpreted to put the alien to the choice of either (1) "remain[ing] in the United States to ensure [his] motion to reopen remains pending, while incurring statutory penalties for overstaying the voluntary departure date" or (2) "avoid[ing] penalties by prompt departure but abandon[ing] the motion to reopen." *Ibid.* This, according to the Court, would "render the statutory right to seek reopening a nullity in most cases of voluntary departure." *Ante*, at 13–14. Indeed, the problem is of mythological proportions: "[T]he alien who is granted voluntary departure but whose circumstances have changed in a manner cognizable by a motion to reopen is between Scylla and Charybdis: He or she can leave the United States in accordance with the voluntary departure order; but, pursuant to regulation, the motion to reopen will be deemed withdrawn." *Ante*, at 15. So certain is the Court of this premise that it is asserted no less than seven times during the course of today's opinion. See *ante*, at 2, 13, 15–19.

The premise is false. It would indeed be extraordinary (though I doubt it would justify a judicial rewrite) for a statute to impose that stark choice upon an alien: depart

and lose your right to seek reopening, or stay and incur statutory penalties. But that is *not* the choice this statute imposes. It offers the alien a deal, if he finds it in his interest and wishes to take it: "Agree to depart voluntarily (within the specified period, of course) and you may lose your right to pursue reopening, but you will not suffer detention, you can depart at your own convenience rather than ours, and to the destination that you rather than we select, and you will not suffer the statutory restrictions upon reentry that accompany involuntary departure. If you accept this deal, however, but do not live up to it—if you fail to depart as promised within the specified period—you will become ineligible for cancellation of removal, adjustment of status, and voluntary departure." Seems entirely reasonable to me. Litigants are put to similar voluntary choices between the rock and the whirlpool all the time, without cries for a judicial rewrite of the law. It happens, for example, whenever a criminal defendant is offered a plea bargain that gives him a lesser sentence than he might otherwise receive but deprives him of his right to trial by jury and his right to appeal. It is indeed utterly commonplace that *electing* to pursue one avenue of relief may require the surrender of certain other remedies.

Petitioner requested and accepted the above described deal, but now—to put the point bluntly but entirely accurately—he wants to back out. The case is as simple as that. Two days before the deadline for his promised voluntary departure, he filed a motion asking the Board of Immigration Appeals (BIA) to reopen his removal proceedings and remand his case to the Immigration Judge for adjustment of status based on his wife's pending visa petition. Administrative Record 3; see *id.*, at 8–21. The motion also asked the BIA to "withdraw his request for voluntary departure" and "instead accep[t] an order of deportation." *Id.*, at 10. After the voluntary departure

period expired, the BIA denied petitioner's motion to reopen, explaining that under 8 U. S. C. §1229c(d) (2000 ed. and Supp. V), "an alien who fails to depart following a grant of voluntary departure . . . is statutorily barred from applying for certain forms of discretionary relief." App. to Pet. for Cert. 3–4.

It seems to me that the BIA proceeded just as it should have, and just as petitioner had every reason to expect. To be sure, the statute provides for the right to file (and presumably to have ruled upon in due course) a petition to reopen. But it does not forbid the relinquishment of that right in exchange for other benefits that the BIA has discretion to provide. Nor does it suggest any weird departure from the ancient rule that an offer (the offer to depart voluntarily in exchange for specified benefits, and with specified consequences for default) cannot be "withdrawn" after it has been accepted and after the *quid pro quo* promise (to depart) has been made.

The Court's rejection of this straightforward analysis is inconsistent with its treatment of petitioner's argument that the statute requires automatic tolling of the voluntary departure period while a motion to reopen is pending. With respect to that argument, the Court says:

> "Voluntary departure is an agreed-upon exchange of benefits, much like a settlement agreement. In return for anticipated benefits, including the possibility of readmission, an alien who requests voluntary departure represents that he or she 'has the means to depart the United States and intends to do so' promptly. Included among the substantive burdens imposed upon the alien when selecting voluntary departure is the obligation to arrange for departure, and actually depart, within the 60-day period." *Ante*, at 16–17 (citations omitted).

Precisely so. But also among the substantive burdens is the inability to receive certain relief through a motion to reopen once the promised departure date has passed; and perhaps paramount among the substantive burdens is that the alien is *bound* to his agreement. The Court is quite right that the Act does not allow us to require that an alien who agrees to depart voluntarily must receive the benefits of his bargain without the costs. But why does it allow us to convert the alien's statutorily required promise to depart voluntarily into an "option either to abide by the terms, and receive the agreed-upon benefits, of voluntary departure; or, alternatively, to forgo those benefits and remain in the United States to pursue an administrative motion"? *Ante*, at 18. And why does it allow us to nullify the provision of §1229c(d)(1) that failure to depart within the prescribed and promised period causes the alien to be ineligible for certain relief, including adjustment of status (which is what petitioner seeks here) for 10 years?

Of course it is not unusual for the Court to blue-pencil a statute in this fashion, directing that one of its provisions, severable from the rest, be disregarded. But that is done when the blue-penciled provision is *unconstitutional*. It would be unremarkable, if the Court found that the alien had a constitutional right to reopen, and that conditioning permission for voluntary departure upon waiver of that right was an unconstitutional condition, for the Court to order that the alien cannot be held to his commitment. But that is not the case here. The Court holds that the plain requirement of the statute and of validly adopted regulations cannot be enforced *because the statute itself forbids it.*

Not so. The Court derives this prohibition from its belief that an alien must, no matter what, be given the full benefit of the right to reopen, even if that means creating an extrastatutory option to renege upon the statutorily contemplated agreement to depart voluntarily. "We must

be reluctant to assume," the Court says, "that the voluntary departure statute was designed to remove this important safeguard [of the motion to reopen]," "particularly so when the plain text of the statute reveals no such limitation." *Ante*, at 16. But in fact that safeguard is not sacrosanct. The "plain text of the statute" does *cause* voluntary departure to remove that safeguard for at least 30 days of its 90-day existence, and *permits* voluntary departure to remove it almost entirely. Section 1229a(c)(7) (2000 ed., Supp. V) generally permits the filing of a motion to reopen "within 90 days of . . . entry of a final administrative order of removal." But as I have described, §1229c(b)(2) (2000 ed.) provides that a grant of voluntary departure issued at the conclusion of removal proceedings "shall not be valid for a period exceeding 60 days." Since motions to reopen cannot be filed after removal or departure, the unquestionable effect of the statutory scheme is to deprive the alien who agrees to voluntary departure of the (sacrosanct) right to reopen for a full third of its existence. And since 60 days is merely the maximum period for a voluntary departure, it is theoretically possible for the right to reopen to be limited to one week, or even one day. Given that reality, it is not at all hard to believe that the statute allows nullification of motions to reopen requesting adjustment of status filed within the 60-day departure period and not ruled upon before departure. Indeed, it seems to me much more likely that the statute allows that than that it allows judicial imposition of the unheard-of rule that a promise to depart is not a promise to depart, and judicial nullification of a statutorily prescribed penalty for failure to depart by the gimmick of allowing the request for voluntary departure to be "withdrawn."

The same analysis makes it true that, even under the Court's reconstructed statute, a removable alien's agreement to depart voluntarily may limit, and in some instances foreclose, his ability to pursue a motion to reopen

at a later date. Even if the alien who has agreed to voluntary departure is permitted to renege within the specified departure period, that period can be no longer than 60 days after entry of the order of removal—meaning that he has been deprived of at least 30 days of his right to reopen. Thus, the Court has not "reconciled" statutory provisions; it has simply rewritten two of them to satisfy its notion of sound policy—the requirement of a commitment to depart and the prescription that a failure to do so prevents adjustment of status.

The Court suggests that the statute compels its conclusion because otherwise "[w]hether an alien's motion will be adjudicated within the 60-day statutory period in all likelihood will depend on pure happenstance—namely, the backlog of the particular Board member to whom the motion is assigned" and because "arbitrary results are 'not to be presumed lightly.'" *Ante*, at 15. It is, however, a happenstance that the alien embraces when he makes his commitment to leave, and its effect upon him is therefore not arbitrary. If he wants to be sure to have his motion to reopen considered, he should not enter into the voluntary departure agreement. A reading of the statute that permits that avoidable happenstance seems to me infinitely more plausible than a reading that turns a commitment to depart into an option to depart.

But the most problematic of all the Court's reasons for allowing petitioner to withdraw his motion to depart voluntarily is its reliance on the Department of Justice's (DOJ) as-yet-unadopted proposal that is in some respects (though not the crucial one) similar to the Court's rule. See *ante*, at 17–18 (citing Proposed Rules, DOJ, Executive Office for Immigration Review, Voluntary Departure: Effect of a Motion to Reopen or Reconsider or a Petition for Review, 72 Fed. Reg. 67674, 67677, and n. 2 (2007)). I shall assume that the proposed rule would be valid, even

though it converts the statutory *requirement* of departure within the prescribed period (on pain of losing the right to seek adjustment of status) into an *option* to depart.[1] According to the Court, the proposed regulation "'warrants respectful consideration.'" *Ante*, at 18.  What this evidently means is respectful adoption of that portion of the proposed regulation with which the Court agrees, and *sub silentio* rejection of that portion it disfavors, namely: "The provisions of this proposed rule will be applied . . . only with respect to immigration judge orders issued on or after the effective date of the final rule that grant a period of voluntary departure," 72 Fed. Reg. 67682.  See Supp. Brief for Respondent 8–9 (observing that the rule "will not apply to petitioner's case").  Our administrative law jurisprudence is truly in a state of confused degeneration if this pick-and-choose technique constitutes "respectful" consideration.

It must be acknowledged, however, that the Department's proposed regulation has some bearing upon this case: It demonstrates that the agency is actively considering whether the terms it has prescribed for its discretionary grants of voluntary departure are too harsh and should be revised for the future, perhaps along the very lines that the Justices in today's majority would choose if they were the Attorney General.  It shows, in other words, that today's interpretive gymnastics may have been performed, not for the enjoyment of innumerable aliens in the future, but for Mr. Dada alone.

––––––––––

[1] An agency need not adopt, as we must, the *best* reading of a statute, but merely one that is permissible.  See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 866 (1984).  Moreover, the proposed rule, operating only prospectively, makes the ability to withdraw part of the deal that the alien accepts, and limits the alien's commitment accordingly.  Petitioner's promise has already been made, and the requirement that he depart within the specified period is unconditional.

SCALIA, J., dissenting

\*     \*     \*

In the final analysis, the Court's entire approach to interpreting the statutory scheme can be summed up in this sentence from its opinion:  "Allowing aliens to withdraw from their voluntary departure agreements [ ] establishes a greater probability that their motions to reopen will be considered."  *Ante*, at 19.  That is true enough.  What does not appear from the Court's opinion, however, is the source of the Court's authority to increase that probability in flat contradiction to the text of the statute.  Just as the *Government* can (absent some other statutory restriction) relieve criminal defendants of their plea agreements for one reason or another, the *Government* may well be able to let aliens who have agreed to depart the country voluntarily repudiate their agreements.  This Court lacks such authority, and nothing in the statute remotely dictates the result that today's judgment decrees.  I would affirm the judgment of the Court of Appeals.[2]

---

[2] JUSTICE ALITO agrees that the statute does not require the BIA to grant petitioner's motion to withdraw from his agreement to depart voluntarily.  He chooses to remand the case because the BIA did not give the reason for its denial of the withdrawal motion, and he believes the reason would be the wrong one if the BIA thought it lacked statutory authority to grant.  *Post*, at 2 (dissenting opinion).  But petitioner has challenged neither the adequacy of the BIA's reason for denying his motion, nor the BIA's failure to specify a reason.  He has argued only that the statute requires that he be allowed to withdraw.

# SUPREME COURT OF THE UNITED STATES

_____

No. 06–1181

_____

## SAMSON TAIWO DADA, PETITIONER *v.* MICHAEL B. MUKASEY, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[June 16, 2008]

JUSTICE ALITO, dissenting.

This case presents two questions: (1) "[w]hether the filing of a motion to reopen removal proceedings automatically tolls the period within which an alien must depart . . . under an order granting voluntary departure," Brief for Petitioner i, and (2) "[w]hether an alien who has been granted voluntary departure and has filed a timely motion to reopen should be permitted to withdraw the request for voluntary departure prior to the expiration of the departure period," 552 U. S. \_\_\_\_ (2008). I agree with the Court that the answer to the first question is no. *Ante*, at 2.

As to the second question, the Court's reasoning escapes me. The Court holds as follows: "*Absent a valid regulation resolving the dilemma in a different way,*" "the appropriate way to reconcile the" relevant provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 "is to allow an alien to withdraw the request for voluntary departure before expiration of the departure period." *Ante*, at 2, 17 (emphasis added). Thus, the Court apparently does not hold that the statute compels the Government to permit an alien to withdraw a request for voluntary departure, only that the statute permits that approach, a proposition with which I agree.

Since the statute does not decide the question whether an alien should be permitted to withdraw a voluntary

departure request, the authority to make that policy choice rests with the agency. See, *e.g., Smiley* v. *Citibank (South Dakota), N. A.*, 517 U. S. 735, 740–741 (1996) (noting the "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency"); *Department of Treasury, IRS* v. *FLRA*, 494 U. S. 922, 932–933 (1990) (refusing to sustain an agency's decision on the ground that it was based on "a permissible (though not an inevitable) construction of [a] statute," because the agency should define and adopt that construction "in the first instance"). Accordingly, at the time of the decision in petitioner's case, the Board of Immigration Appeals (BIA or Board) had the authority (a) to adopt the majority's automatic withdrawal rule (indeed, the agency has proposed a regulation to that effect, see *ante*, at 18), (b) to decide that withdrawal should be permitted in certain circumstances, which may or may not be present here, or (c) to hold that a motion to withdraw is never appropriate.

Neither the BIA nor the Fifth Circuit addressed petitioner's motion to withdraw, see *ante*, at 4, and therefore the ground for the Board's decision is unclear. I would affirm if the BIA either chose as a general matter not to permit the withdrawal of requests for voluntary departure or decided that permitting withdrawal was not appropriate under the facts of this case. However, if the BIA rejected the withdrawal request on the ground that it lacked the statutory authority to permit it, the Board erred. Because the ground for the BIA's decision is uncertain, I would vacate and remand.